# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-0745V
UNPUBLISHED

| | |
|---|---|
| RENEE SMITH,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: May 28, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Mallori Browne Openchowski,*[1] *U.S. Department of Justice, Washington, DC, for Respondent.*

## **DECISION AWARDING DAMAGES**[2]

On May 20, 2019, Renee Smith filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving the influenza ("flu") vaccine she received on September 22, 2017. Petition at 1, ¶ 2. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters, and has been

---

[1] Although Ms. Openchowski is attorney of record in this case, attorney Andrew Henning appeared for Respondent at the May 28, 2021 Motions Day argument.

[2] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

conceded by Respondent. Because the parties were unable to resolve damages, the disputed issues were addressed at a Motions Day hearing held on May 28, 2021.

For the reasons set forth below, and as I indicated at the end of the hearing, I find that Petitioner is entitled to a damages award in the amount **$127,281.68, representing $125,000.00 for her past pain and suffering, and $2,281.68 for her past lost wages.**

I.   **Relevant Procedural History**

On September 23, 2020, Respondent filed a Rule 4(c) Report, conceding entitlement. ECF No. 26. The same day, I issued a ruling finding Petitioner was entitled to compensation. ECF No. 27.

For approximately three months thereafter, the parties attempted to informally determine the appropriate amount of damages to be awarded in this case. *See, e.g.,* Status Report, filed Dec. 22, 2020, ECF No. 31. On February 4, 2021, they filed a status report indicating that although they had agreed upon an amount for Petitioner's lost wages, they had reached an impasse regarding the appropriate amount for Petitioner's pain and suffering. ECF No. 33. They expressed their desire to brief the issue. *Id.*

The parties filed their briefs by April 21, 2021. ECF Nos. 35, 37. On April 30, 2021, they indicated their willingness to participate in an expedited Motions Day hearing, scheduled for May 28, 2021. ECF No. 39. At the conclusion of the expedited hearing,[4] I orally informed the parties of my determination, which is more formally set forth herein.

II.  **Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

---

[4] An official recording of the proceeding was taken by court reporter, and a link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entries for this proceeding. Minute Entry, dated May 28, 2021; *see also* www.uscfc.uscourts.gov/trans (last visited May 28, 2021).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III. Appropriate Compensation for Petitioner's Pain and Suffering

The parties agree Petitioner should be awarded $2,281.68 in compensation for her past lost wages. Petitioner's Brief in Support of Damages ("Pet. Brief") at 1; Respondent's Brief on Damages ("Res. Brief") at 1 n.1. Thus, the only issue to be determined is the appropriate amount of compensation for Petitioner's pain and suffering.

Petitioner has requested an amount of $135,000.00 for past/actual pain and suffering. Pet. Brief at 1. In her brief, she emphasized the short, three-day period between her injury and when she first sought treatment, the difficulties she experienced performing her job and time she was unable to work, the need for surgery after relying on more conservative treatment for eight months, and the overall length of her injury, thirteen

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

months. *Id.* at 8-9. She compared the facts and circumstances in her case with those experienced by the petitioners in *Dobbins, Nute,* and *Rafftery*, who received awards ranging from $125,000.00 to $127,500.00 for their past pain and suffering.[6] Pet. Brief at 9-10. Maintaining that her injury is most like the one in *Rafferty* (where the claimant received $127,500.00), Petitioner asserted that she should receive a greater award because the *Rafferty* petitioner waited longer, 60 days, before seeking treatment; underwent surgery after only five months, as opposed to the eight months Petitioner waited; and suffered her injury for a shorter overall duration, eleven months. *Id.* at 10.

In reaction, Respondent maintained Petitioner should be awarded no more than $85,000.00 for her past pain and suffering. Res. Brief at 1. While arguing that this lower amount is more appropriate, he emphasized the good recovery Petitioner experienced thirteen months post-vaccination. Based on the improvement shown prior to surgery - from the initial conservative treatment Petitioner received, the results of Petitioner's MRI, and the second orthopedist's seen by Petitioner for her worker's compensation claim, Respondent argued that the surgery undergone by Petitioner was not needed. *Id.* at 8. During oral argument, Respondent's counsel Mr. Henning asserted Petitioner was motivated to undergo surgery, not by the pain and suffering she was enduring, but rather by a desire to resolve her injury more quickly.

Rather than citing comparable reasoned damages decisions, Respondent argued that the large number of proffered cases in SPU is a more accurate representation of the appropriate of damages to be awarded and criticized the "meeting-in-the-middle" method that he believes is being utilized by the special masters to split the difference between each side's pain and suffering figure. Res. Brief at 5-6. He also proposed that awards outside the Vaccine Program should be considered since he believes Program awards are unreasonably inflated. Respondent and *Id.* at 6-7.

As I informed the parties at hearing, I have previously addressed the more general arguments about calculation of pain and suffering damages made by Respondent during other Motions Day oral arguments and in other damages decisions. While noting that this end result may occur in some cases (and thereby disappoint both sides as a result), I have in fact explicitly rejected the "meeting-in-the-middle" method Respondent claims is being used, observing that "each petitioner deserves an examination of the specific facts and circumstances in her or his case." *Sakovits v. Sec'y of Health & Human Servs.*, No. 17-1028V, 2020 WL 3729420, at *3 (Fed. Cl. Spec. Mstr. June 4, 2020). I also have rejected Respondent's argument that the amounts awarded in proffered cases are a more

---

[6] *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) (awarding $127,500.00 for pain and suffering and $4,154.04 for actual unreimbursable expenses); *Nute v. Sec'y of Health & Human Servs.*, No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019) (awarding $125,000.00 for pain and suffering); *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for pain and suffering and $3,143.80 for actual unreimbursable expenses).

accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. *Id.* at *4. While "settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases," they are not as persuasive as reasoned decisions from a judicial neutral. *Id.* (emphasis in original). Taken as a whole, however, the data from these decisions can be a helpful gauge of the compensation being awarded in SPU SIRVA cases. *See Johnson v. Sec'y of Health & Human Servs.*, No. 18-1486V, 2021 WL 836891, at *4-5 (Fed. Cl. Spec. Mstr. Jan. 25, 2021) (for the most recent data in SPU SIRVA cases).

I also have not previously given great weight to Respondent's citation to pain and suffering determinations from traditional tort system state court cases, noting that Congress intended the "no-fault" system established in the Vaccine Program to be generous. H.R. REP. NO. 99-908, at 12-13 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6353-54. Thus, Vaccine Program compensation will inherently be greater than what is awarded in civil actions elsewhere. Additionally, the descriptions of the traditional tort system cases proposed by Respondent often lack basic information needed for comparison. *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956, at *18 (Fed. Cl. Spec. Mstr. May 21, 2020). As a result, "SIRVA awards in the Vaccine Program are self-evidently more relevant and apposite." *Id.*

In arguing for a lower pain and suffering figure herein, Respondent cited no prior reasoned decisions from the Vaccine Program. During the proceeding held during the expedited Motions Day in this case, I reminded Respondent's counsel that if Respondent wants to prevail in future cases, it is crucial that he offer comparable awards to support the argued for amount(s). And jury awards in other jurisdictions must be linked to the vaccine case at hand.

In this case, the medical records establish that three days after vaccination, Petitioner sought medical care, complaining of severe pain, limited range of motion ("ROM"), and difficulty performing daily tasks. Exhibit 2 at 83. An ultrasound of the injection site showed fluid in the subacromial subdeltoid bursa. *Id.* at 96. Petitioner was placed on two weeks of medical leave. Petitioner's PCP described her injury as "urgent" and instructed that "she needs ortho ASAP." *Id.* at 108.

When seen by an orthopedist a few days later, on September 28, 2017, she reported a maximum pain level of six out of ten. Exhibit 3 at 25. The orthopedist administered a cortisone injection. *Id.* at 23-24. When Petitioner returned on October 5, 2017, she indicated the injection had reduced her pain. However, she reported the same maximum pain level of six out of ten. *Id.* at 46. When evaluated for physical therapy that same day, she reported pain at a level of five out of ten at rest, increasing to a maximum level of seven or eight out of ten. Exhibit 3 at 36. She also indicated she had been unable to move her arm the night of vaccination. *Id.*

5

Petitioner's ROM improved with PT, but her pain continued. Exhibit 2 at 133-34. Approximately one month after vaccination, Petitioner's right shoulder still was painful, but she had more mobility. *Id.* at 156. Petitioner was able to return to work on October 24, 2017, one-month post-vaccination. *Id.* at 177. Approximately two weeks later, her maximum pain level had decreased to two out of ten. Exhibit 3 at 73. From early October through late November 2017, Petitioner underwent 14 PT sessions. Exhibit 4 at 5-206.

An MRI, performed in early December 2017, revealed "a partial thickness bursal surface tear" and "a mild amount of fluid within the subacromial/subdeltoid bursal." Exhibit 3 at 92. In early December 2017, after reaching a plateau in her improvement, Petitioner decided to undergo arthroscopic surgery. *Id.* at 123. Due to her worker's compensation claim, she was required by obtain a second orthopedic opinion. *Id.*; Exhibit 8 at 5. The second orthopedist opined Petitioner's injury could resolve with more conservative treatment, such as continued PT and one or two more cortisone injections. *Id.* at 6.

Despite this second opinion, Petitioner underwent arthroscopic surgery on May 14, 2018. Exhibit 5 at 18-19. She was able to return to light duty, sedentary work, approximately one-month post-surgery. Exhibit 3 at 8. After attending 35 PT sessions, from mid-May through late September 2018, Petitioner's SIRVA had improved to the point where she had only tolerable pain when performing strenuous activities such as vacuuming and cleaning her car, which otherwise was at a level of zero out of ten. Exhibit 4 at 629, 854. When seen again by the orthopedist on October 30, 2018, approximately thirteen months after vaccination, Petitioner "[wa]s cleared to return to work w[ith] no further restrictions." Exhibit 3 at 353.

In summary, the medical records show Petitioner suffered immediate pain and limited ROM after receiving a flu vaccine on September 22, 2017. She reported moderate to severe levels of pain and was unable to work for a month post-vaccination. She obtained some improvement, initially regarding her ROM and then in her level of pain, from one cortisone injection and 14 sessions of PT over a period of two months. She underwent arthroscopic surgery in May 2018, approximately eight months after vaccination. After 35 sessions of post-surgery PT during a more than five-month period, Petitioner recovered to the point where she was experiencing only occasionally pain with strenuous activity.

While I considered Respondent's argument regarding the improvement Petitioner experienced prior to surgery, the procedure she underwent still constitutes a surgical intervention, even if driven in part by Petitioner's preference. Her choice was no doubt based upon the pain and other symptoms she was experiencing, and a desire to shorten the duration of her injury through such surgical intervention is evidence of the suffering Petitioner was experiencing.

I find the range proposed by Petitioner, arising from prior Program reasoned decisions, provides a persuasive framework for determining the level of the pain and suffering award to be issued in this case. In particular, Petitioner's SIRVA more closely resembles the injury suffered by the *Nute* petitioner – making the past pain and suffering award from that case the better comparable herein. Ms. Smith, like the *Nute* petitioner, experienced moderate to severe pain and limited ROM for approximately eight months before undergoing arthroscopic surgery, followed by substantial PT. *Nute,* 2019 WL 6125008, at *12. Thereafter, they both recovered well. *Id.* Although the circumstances in *Rafferty* are also comparable to those experienced by Petitioner, the *Rafferty* petitioner's surgery revealed more extensive damage and resulted in residual pain and suffering due to scarring. *Rafferty*, 2020 WL 3495956, at *15-16.

### IV.  Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $125,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. I also find that Petitioner is entitled to the agreed upon amount of $2,281.68 for her past lost wages.**

**I thus award Petitioner a lump sum payment of $<u>127,281.68</u>, representing $125,000.00 for her actual pain and suffering and $2,281.68 for her actual lost wages in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this decision.[7]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.